**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| John Doe, <br><br>          Plaintiff, <br><br> v. <br><br> Childs Cantey Thrasher, Donald Gist, Brian M. Barnwell, Scott E. Frick, AJ Holloway, Don Jackson, and Brandolyn Thomas Pinkston, in their official capacities as members of the South Carolina Ethics Commission; Alan Wilson, in his official capacity as Attorney General; and Byron Gipson, in his official capacity as Fifth Circuit Solicitor, <br><br>          Defendants. | C.A. No. 3:21-cv-02748-MGL <br><br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

According to the South Carolina Ethics Commission (Commission), it is lawful for a public official to be secretly paid by a lobbyist principal *and* to take official action in furtherance of that special interest so long as the money used to pay the public official is laundered through the lobbyist principal's wholly owned subsidiary. It is a legal absurdity that renders the disclosure and recusal provisions of the South Carolina Ethics, Government Accountability, and Campaign Report Act of 1991 (Ethics Act), S.C. Code Ann. §§ 8-13-100 et seq., a nullity, but it is not one Plaintiff John Doe is permitted to speak about without subjecting himself to criminal penalty under South Carolina Code § 8-13-320(10)(g).

This action seeks a declaration that a state law that gags a citizen from speaking about an ethics complaint made about a public official, gags him from speaking about the investigation of that complaint, and gags him from discussing its disposition once the Commission determines the

allegation lacked probable cause is an unconstitutional prior restraint and viewpoint discrimination that violates the First Amendment of the U.S. Constitution.

Plaintiff has good reason to want to speak. The Commission *corroborated* his allegations that a state Legislator took official action to advance a bill that would benefit a Lobbyist Principal at the same time Legislator had contracts paying him remuneration from the Lobbyist Principal's wholly owned Subsidiary. According to the Commission's secret Order of Dismissal (Dismissal), there was no probable cause because Lawmaker's receipt of the money from Subsidiary did not constitute an "affiliation" with Lobbyist Principal. If this is the law in South Carolina, the public, the press, and the General Assembly should know, first and foremost so this massive loophole can be closed. Plaintiff would like to petition his government to reform the law, but South Carolina Code § 8-13-540(c) renders the proceeding "confidential" and § 8-13-320(10)(g) threatens him with criminal prosecution for speaking about this star-chamber proceeding.

Plaintiff would respectfully show the Court as follows:

1. This action arises under the First Amendment of the U.S. Constitution and is brought under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 & 2202. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

2. The Court has personal jurisdiction over all of the Defendants because they reside and do official business in the District and exercise state power in the District. Venue is proper under 28 U.S.C. § 1391(b) because the most substantial part of the events that have and will occur and give rise to the claim occurred in the District.

3. Plaintiff John Doe is an unnamed individual who petitioned his government for redress by filing an ethics complaint under South Carolina Code §§ 8-13-530(2) & (4). His identity is undisclosed because of the possibility it would violate South Carolina Code § 8-13-540(C) and

2

subject him to the criminal penalties codified at South Carolina Code § 8-13-320(10)(g). Upon assignment of this case to a District Judge, Plaintiff will transmit a copy of the Order of Dismissal to the Court.

4. Defendants Childs Cantey Thrasher, Donald Gist, Brian M. Barnwell, Scott E. Frick, AJ Holloway, Don Jackson, and Brandolyn Thomas Pinkston are the duly appointed members of the South Carolina Ethics Commission, sued here in their official capacities. They conduct Commission business in Richland County, South Carolina.

5. Defendant Alan Wilson is the duly elected Attorney General of South Carolina sued in his official capacity. He is the State's top prosecutor and has jurisdiction to enforce violations of the South Carolina Ethics Act throughout the State, including in Richland County.

6. Defendant Byron Gipson is the duly elected Solicitor of the Fifth Judicial Circuit sued in his official capacity. He is Richland County's top prosecutor with jurisdiction to enforce violations of the South Carolina Ethics Act in Richland County.

## FACTUAL ALLEGATIONS

7. The following allegations are drawn almost entirely from the factual findings of the Dismissal issued by the Commission on August 3, 2021. The names of the persons and corporations involved are not used to preserve the confidentiality of the matter until the Court can strike down South Carolina Code §§ 8-13-320(10)(g) & -540(C). Some important details are also omitted for the same reason.

8. Legislator is a member of the South Carolina General Assembly and owns Legislator's Limited Liability Company (LLC) #1 and Legislator's LLC #2.

9. Subsidiary is a foreign limited liability company and wholly owned subsidiary of Intermediary Subsidiary.

10. Intermediary Subsidiary is a foreign limited liability company and wholly owned subsidiary of Lobbyist Principal.

11. Lobbyist Principal is a foreign corporation and a "lobbyist principal" within the meaning of South Carolina Code § 2-17-10(14). Lobbyist Principal was registered with the Commission as such since 2017. It employs lobbyists at the South Carolina Statehouse to lobby lawmakers to support its special interests.

12. Neither Subsidiary nor Intermediary Subsidiary have ever been registered as lobbyist principals.

13. In 2017, and while Lobbyist Principal was registered as a lobbyist principal, Legislator's LLC #1 entered into a three-year contract with Subsidiary whereby Subsidiary paid $12,000 shortly after execution of the Contract, $13,000 in the first year, $14,000 in the second year, and $15,000 in the third year.

14. The signatory to the Contract for Subsidiary was its Vice President.

15. At the same time Vice President was the vice president of Subsidiary, he was also employed by and served as a vice president for Lobbyist Principal.

16. Upon execution of the Contract, it was to be returned to Intermediary Subsidiary.

17. During its investigation, the Commission identified another company owned by Legislator—Legislator's LLC #2—with "an identical contract" between Subsidiary and Legislator's LLC #2.

18. While the Dismissal does not provide any further information, presumably identical means the financial terms are the same as the contract Legislator's LLC #1.

19. If correct, the total amount paid to Legislator's various companies by Subsidiary is $108,000 over three years.

20. The Ethics Act mandates the disclosure of certain pecuniary relationships by public officials because they are fraught with the prospect of self-interest.

21. Of concern here, South Carolina Code § 8-13-1130 requires public officials to disclose "the name of any person he knows to be a lobbyist … or a lobbyist's principal … [who] has in the previous calendar year purchased from the [public official], … or a business with which the [public official] is associated, goods or services in an amount in excess of two hundred dollars."

22. A "business with which [a public official] is associated" is defined by the Ethics Act to include a business for which the public official is a director, officer, owner, employee, compensated agent, or holder of stock worth one hundred thousand dollars or more at fair market value and that constitutes five percent or more of total outstanding stock of any class. S.C. Code Ann. § 8-13-100(4).

23. Under the Ethics Act, "lobbyists" are persons employed or retained to influence "by direct communication" public officials or public employees. S.C. Code Ann. § 2-17-10(13).

24. Likewise, a "lobbyist principal" is a person on whose behalf or for whose benefit the lobbyist lobbies. Id. § 2-17-10(14).

25. Notably, pecuniary entanglements between lobbyist principals and public officials are not forbidden *provided* they are disclosed so the public can draw its own conclusions about whether the lobbyist principal's influence is undue.

26. However, such associations also impose limits—specifically, disclosure and recusal—when it comes to the public official taking official action.

27. A public official is required to file an annual statement of economic interest (SEI) that discloses (in relevant part) the identity of every business entity in which the filer (or immediate family member) held or controlled an interest constituted five percent or more of all outstanding

5

securities or interests valued at $100,000 or more; and a listing of the source of private income received by the filer (or immediate family). S.C. Code Ann. §§ 8-13-1110 & -1120.

28. Further, a public official must disclose any lobbyist or lobbyist principal that, during the previous calendar year, "purchased from the filer, a member of the filer's immediate family, an individual with whom the filer is associated, or a business with which the filer is associated, goods or services in an amount in excess of two hundred dollars." Id. § 8-13-1130.

29. "No public official … may make, participate in making, or in any way attempt to use his office … to influence a governmental decision in which he … an individual with whom he is associated, or a business with which he is associated has an economic interest." S.C. Code Ann. § 8-13-700(B). When a public official is required to act on a matter that affects his economic interest or that of an associated individual or business, he must recuse and disclose the nature of the conflict in writing. Id.

30. Legislator's statements of economic interest (SEI) for 2019, 2020, and 2021 reported private income from Legislator's LLC. In the "Additional Info" section of the SEI, Legislator reported that entities in which he is a member with interests valued in excess of $100,000 had contracts with companies in the same business sector as Lobbyist Principal, but Legislator did not disclose the affiliation with Lobbyist Principal, Intermediary Subsidiary, or Subsidiary as the companies in question.

31. In 2020, when Legislator's LLC #1 and Legislator's LLC #2 were still being paid by Subsidiary, a legislative committee that Legislator serves on met and discussed Lobbyist Principal's special interest in a piece of legislation.

32. After that discussion, Legislator voted in favor of the bill.

33. Plaintiff filed an ethics complaint with the appropriate legislative ethics committee under South Carolina Code § 8-13-530(2) & (4).

34. The complaint detailed almost all of facts set forth above, and other supporting facts omitted here to preserve the confidentiality of the underlying proceeding. Further, it alleged Legislator (1) failed to properly disclose the relationship with Lobbyist Principal on his SEI as required by § 8-13-1130 and (2) that Legislator took official action in advancing legislation when § 8-13-700(B) required disclosure and recusal.

35. Pursuant to South Carolina Code §§ 8-13-530(2) & -540(A)(2), the legislative ethics committee referred the matter to the Commission.

36. Commission staff reviewed the complaint and determined the allegations warranted investigation. Precisely what the Commission or its staff did to investigate is unknown.

37. The matter was eventually considered by the Commission in a secret proceeding that neither Plaintiff nor the public received notice or an opportunity to be present.

38. On August 3, 2021, the Commission entered the Dismissal.

39. The Dismissal corroborated virtually all of the factual allegations in the complaint.[1]

40. Nevertheless, the Commission reasoned there was "insufficient evidence" to believe Legislator violated the Ethics Act because Subsidiary "is not a registered [lobbyist principal] in the State of South Carolina[,]" therefore (according to the Commission) Legislator

---

[1] The one factual claim that was not corroborated concerned another piece of legislation the complaint alleged Legislator voted on when he should have disclosed and recused. In a footnote, the Dismissal disputes that claim, finding that Legislator did not vote and filed a recusal form explaining the nature of the conflict. That finding appears correct as to third reading, but *not* final passage where, according to the General Assembly's website, Legislator did vote to concur in the amendments made by the other legislative branch.

7

was not required to report this information on [Legislator's] SEI under Section 8-13-1130 of the Ethics Act." Dismissal, 5.

41. With respect to the obligation to recuse from voting on the committee matter, the Commission reasoned Legislator "was not required to recuse from this matter because neither [Legislator] nor any business with which [Legislator] was associated had an economic interest." Dismissal, 6.

42. The Commission reasoned further:

As indicated above, [Legislator's] Agreements are with [Subsidiary], not [Lobbyist Principal]. Thus, the only relevant inquiry is whether [Legislator] or [Subsidiary] possessed an economic interest in the vote held on [date]. The Commission finds that neither [Legislator] nor [Subsidiary] had a sufficient economic interest in [bill number] to require recusal.

Dismissal, 6.

43. There is no public record of how the individual commissioners (all Defendants here) voted on the matter or of the evidence presented to them.

44. Under the Ethics Act, "[a]ll investigations, inquiries, hearings and accompanying documents are confidential and only may be released pursuant to this section." S.C. Code Ann. § 8-13-540(C)(1).

45. When the Commission concludes a complaint lacks probable, it must be dismissed, and it remains "confidential". Id. § 8-13-540(B)(2)(b) & (C)(1)–(2).

46. "The wilful release of confidential information is a misdemeanor, and a person releasing such confidential information, upon conviction, must be fined not more than one thousand dollars or imprisoned not more than one year." Id. § 8-13-320(10)(g).

47. Further, the Commission maintains that all letters, written inquiries, and other correspondence sent to the Commission requesting an investigation of or inquiry into potential

violations of the Ethics Act are also confidential and may not be made public. Op. S.C. St. Ethics Comm., SEC AO2002-010, March 20, 2002 ("It is abundantly clear that all 'complaints' filed with the Commission pursuant to Section 8-13-320 (10)(a) are confidential…. Although the Commission is concerned about potential constitutional issues, freedom of speech and press and due process absent the receipt of a verified complaint, the Commission believes the confidentiality of the process is preeminent.").[2]

48.     Plaintiff received a copy of the Dismissal with a cover letter from Commission staff dated August 5, 2021, stating "Attached, please find an Order of Dismissal issued by the Commission on August 3, 3031, in the above referenced matter. Pursuant to S.C. Code Ann. §8-13-540(C), this matter remains confidential."

49.     This action followed.

### FOR A FIRST CAUSE OF ACTION
### (Declaratory Relief)

50.     Each of the prior paragraphs is incorporated here verbatim.

51.     This is a facial challenge to the constitutionality of a state law.

52.     In Gaffney Ledger v. S.C. Ethics Comm'n, 600 S.E.2d 540 (S.C. 2004), a citizen filed an ethics complaint against a newspaper, the complaint was dismissed, the newspaper published a story about the dismissal, and the citizen filed another complaint alleging the newspaper violated then-section 8-13-320(b), requiring a dismissed matter to be stricken unless the respondent waived confidentiality, and subsection (10)(g), which at that time provided:

> (g) All investigations, inquiries, hearings, and accompanying documents must remain confidential until final disposition of a matter unless the respondent waives the right to confidentiality. The wilful release of confidential information is a

---

[2] Available at:
https://ethics.sc.gov/sites/default/files/Documents/Advisory%20Opinions/Advisory%20Opinion%20Topics/2002/AO2002-010.pdf.

>misdemeanor, and any person releasing such confidential information, upon conviction, must be fined not more than one thousand dollars or imprisoned not more than one year.

Gaffney Ledger, 600 S.E.2d at 542 (quoting S.C. Code Ann. § 8-13-320(10)(g) (Supp. 1993) (enrolled as 1993 S.C. Laws Act 184 (H.3151) § 147)).

53. The Gaffney Ledger Court avoided the newspaper's constitutional claim and construed the statute narrowly, explaining:

>A close reading of subsection 10(b) indicates it applies only to the Commission's own record of the proceedings and not to public disclosure by a party. …
>
>There is no confidentiality requirement as to the parties, however, once the matter has been dismissed. Subsection 10(g), and not 10(b), controls a party's disclosure of an ethics matter. As provided in that subsection, all information remains confidential only until final disposition.

600 S.E.2d at 542.

54. The South Carolina General Assembly disagreed.

55. In 2010, then-Chair of the S.C. House Judiciary Committee, Representative Jim Harrison (now serving time in the state penitentiary for ethics crimes), introduced H.4542 to amend section 8-13-320(10)(g) to remove the provision construed in Gaffney Ledger and to add a probable cause determination as the event that triggers public disclosure: "All investigations, inquiries, hearings, and accompanying documents must remain confidential until a finding of probable cause or dismissal unless the respondent waives the right to confidentiality." H.J. Feb. 16, 2010, 118th Leg. Sess. (2009–2010). The bill was passed into law and enrolled. 2011 S.C. Laws Act 1 (H.4542).

56. In 2017, the state legislature amended § 8-13-320(10) again. Subsection (10)(b) was amended to require dismissal of a complaint when the facts alleged are not sufficient to constitute a violation and to require the entire matter be stricken from the public record unless the

10

respondent waives confidentiality, and subsection (10)(g) was amended into its current form, requiring confidentiality when a matter is dismissed for lack of probable cause or as a technical violation. 2016 S.C. Laws Act 282 (H.3184) § 7.

57. Presently, when a member of the public files a complaint using the Commission's Complaint Form, it warns:

> **All investigations, inquiries, hearings, and accompanying documents must remain confidential unless respondent waives the right to confidentiality. If there is a finding of probable cause, the following documents become public record: the complaint, the response (if any) by respondent, and the notice of hearing. If a hearing is to be held, the final order and all exhibits become public record. If no hearing is held following a finding of probable cause, the final disposition of the matter becomes public record. The willful release of confidential information is a misdemeanor, and any person releasing such confidential information, upon conviction, must be fined not more than one thousand dollars ($1,000) or imprisoned not more than one year. Section 8-13-320(10)(g).**

SEC-7 (Revised 8/2019) (bold original).[3]

58. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Const., amend. I.

59. The First Amendment is incorporated against the states through the due process clause of the Fourteenth Amendment. See U.S. Const., amend. XIV § 1.

60. South Carolina Code §§ 8-13-320(10)(g) & -540(C), as amended, impose a gag on persons, like Plaintiff, who seek redress from their government by filing a complaint against public officials for violations of the Ethics Act.

61. A gag order (or gag rule) forbids speech activity.

---

[3] Available at: https://ethics.sc.gov/sites/default/files/Documents/Complaints/C102form.pdf.

62. Even among First Amendment claims, gag orders warrant the most rigorous form of review because they rest at the intersection of two disfavored forms of expressive limitations: prior restraints and content-based limitations.

63. Gag orders inherently target speech relating to litigated matters—i.e., disputes at the core of public and community life—and run afoul of the presumption that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.

64. Gag orders are presumptively unconstitutional and require strict scrutiny.

65. These concerns are present here where Plaintiff wishes to speak about:

   a. The allegations, which concern a public official's performance of public duties;

   b. The Commission's secret investigation and proceeding;

   c. The Commission's legal conclusion that it is lawful under the Ethics Act for special interests to pay public officials and for the public official to take official action on matters important to the special interest, without disclosure or recusal, so long as the special interest launders the money paid to the public official through a wholly owned subsidiary;

   d. The need to reform the Ethics Act to close this massive loophole allowing special interests to do indirectly what they cannot do directly—pay public officials for official action; and

   e. On other matters of and concerning the underlying matter.

66. Plaintiff cannot speak without violating the Ethics Act's confidentiality provision and subjecting himself to possible criminal penalty.

67. Accordingly, the Ethics Act's confidentiality provision and criminal penalty for violating it are an unconstitutional gag that offend the First Amendment.

68. The Court should declare that South Carolina Code §§ 8-13-320(10)(g) & -540(C):

   a. Impose a prior restraint on speech;

   b. Impose viewpoint discrimination;

   c. Subject Plaintiff to the threat of criminal prosecution for speaking;

   d. Do not further a compelling state interest;

   e. Are not narrowly tailored to accomplish a compelling state interest; and

   f. Violates the First Amendment of the U.S. Constitution.

## FOR A FIRST CAUSE OF ACTION
### (Injunctive Relief)

69. Each of the prior paragraphs is incorporated here verbatim.

70. Because South Carolina Code § 8-13-320(10)(g) subjects Plaintiff to possible criminal prosecution, the Court should also grant injunctive relief and:

   a. Prohibit the Commission Defendants from referring any violation of § 8-13-320(10)(g) to a prosecutorial authority; and

   b. Prohibit Defendants Wilson and Gipson from initiating criminal process for a violation of § 8-13-320(10)(g).

## PRAYER

WHEREFORE, Plaintiff prays that:

   i. The Court enters judgment against the Defendants as to each cause of action;

   ii. The Court declare that South Carolina Code §§ 8-13-320(10)(g) & -540(C) are facially unconstitutional in one or more ways set forth above

13

and that Plaintiff is free to disclose, disseminate, publish, discuss, or otherwise speaking about or concerning the underlying ethics matter, the Commission procedure, the Dismissal, the Ethics Act, or any other aspect of this dispute;

iii. The Court enjoin Defendants from enforcing the criminal provision codified at South Carolina Code § 8-13-320(10)(g);

iv. That Plaintiff recover the costs of this action under 42 U.S.C. § 1988,[4] and

v. That the Court order any such further relief that is necessary to effectuate its judgement, necessary, or just.

Respectfully submitted by,

s/Christopher P. Kenney
Christopher P. Kenney (Fed. ID No. 11314)
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street
Post Office Box 1090
Columbia, SC 29202
Telephone: (803) 252-4848
Facsimile: (803) 252-4810
cpk@harpootlianlaw.com

ATTORNEY FOR PLAINTIFF JOHN DOE

August 25, 2021
Columbia, South Carolina.

---

[4] No attorneys' fees are sought.