IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| John Doe, | Civil Action No. 3:21-cv-02748-MGL |
| Plaintiff, | |
| vs. | |
| Childs Cantey Thrasher, Donald Gist, Brian M. Barnwell, Scott E. Frick, AJ Holloway, Don Jackson, and Brandolyn Thomas Pinkston, in their official capacities as members of the South Carolina Ethics Commission; Alan Wilson, in his official capacity as Attorney General; and Byron Gipson, in his official capacity as Fifth Circuit Solicitor, | CONSENT MOTION FOR PRESIDENT ALEXANDER TO INTERVENE |
| Defendants. | |

Thomas C. Alexander, in his official capacity as President of the South Carolina Senate, respectfully moves the Court for leave to intervene in this matter, both as a matter of right and permissively. This case involves a constitutional challenge to the South Carolina State Ethics Code, but it is based on an incorrect reading of the statute's confidentiality provision. If the Court adopts that incorrect reading, it would significantly, yet improperly, impede the State's ability to investigate alleged violations of the Ethics Code, including in matters pending before the Senate Ethics Committee. Accordingly, Senator Alexander respectfully seeks leave to intervene in this case as a defendant.

The Plaintiff and all Defendants have indicated their consent to this motion, with the exception of Solicitor Gipson, who has not yet informed President Alexander of his position on the issue. Nevertheless, President Alexander states the basis for intervention so that the Court may be satisfied of the propriety of this motion in the event that Solicitor Gipson ultimately objects.

**STANDARD FOR INTERVENTION**

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides that "[o]n timely motion, the court must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Similarly, Rule 24(b)(1)(B) permits intervention as a matter of the Court's discretion when the movant "has a claim or defense that shares with the main action a common question of law or fact."

In either instance, "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

**ARGUMENT**

I. **President Alexander is entitled to intervene as a matter of right because the challenged law governs the Legislative Ethics Committees, yet they are unrepresented in this proceeding.**

In order for President Alexander to intervene as a matter of right, he must show that this application is timely, that he has "an interest in the subject matter of the underlying action," that he is unable to protect that interest if not allowed to intervene, and that his interest is "not adequately represented" by the existing litigants. *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). He readily meets these criteria.

**Timeliness:** This lawsuit was filed on August 25, 2021, and remains in its preliminary stages. Nothing material has happened yet in the litigation beyond the defendants answering the

complaint and the parties filing the Rule 26(f) report. The deadline for amending pleadings has not yet passed. (Dkt. No. 35.)

President Alexander is prepared to comply with the existing scheduling order, though there should be no need for discovery, as this case should be decided as a matter of law based on the plain language of the Ethics Code. By seeking to intervene at the case's outset and before anything material has happened in the litigation, President Alexander's motion is timely.

**Interests in the Subject Matter:** The South Carolina General Assembly passed the State Ethics Code to make comprehensive reforms in the fields of campaign finance, lobbying, and similar activities and disclosures by public officials and candidates in the wake of Operation Lost Trust. *See generally* 1991 S.C. Acts No. 248, at Preamble ("[T]his act is intended to help restore public trust in the governmental institutions and the political and governmental processes."). The law contains myriad boundaries for campaign and political activity, and it outlines a series of carefully considered procedures to disclose and monitor those activities, including procedures designed to allow the State Ethics Commission, the two Legislative Ethics Committees, and law enforcement to investigate alleged violations of the law. *See generally* S.C. Code Ann. § 8-13-320 (establishing the "duties and powers" of the State Ethics Commission); *id.* §§ 8-13-530 to -540 (establishing procedures for addressing ethics complaints before the House or Senate Ethics Committee).

Confidentiality in the investigation process is a key component of the structure that the General Assembly created to ensure that potential witnesses and evidence would be forthcoming and untainted by political or other external pressures. This lawsuit, however, asks the Court to disregard the Legislature's measured judgment over this matter of paramount importance, but it is based on an incorrect understanding of the Ethics Code's confidentiality provisions. If the Court

accepts the Plaintiff's incorrect interpretation of the State Ethics Code's confidentiality requirements and strikes those requirements as a matter of constitutional law, it would have an immediate adverse effect on the Legislative Ethics Committees and their ability to enforce the Ethics Code. Accordingly, President Alexander has an interest in defending the State Ethics Code and its protections that are designed to ensure integrity of investigations of alleged violations.

**Unable to Protect Interests:** If the Court denies intervention, the Legislature will be unable to defend its policy judgments or promote the legitimate state interests that are embodied by the challenged legislation. In fact, the Plaintiff has asked the Court to strike as unconstitutional Section 8-13-540(C), which governs the Legislative Ethics Committees, and which are not represented by any of the existing defendants. It would be improper for the Court to accept the Plaintiff's invitation to enjoin a duly enacted South Carolina law, including one that is specific to governance within the Legislature, without also giving the General Assembly the opportunity to defend that same law.

**Not Adequately Represented by Existing Parties:** Finally, none of the existing parties can adequately represent President Alexander's interests in this litigation because none of them bear the constitutional responsibility for establishing South Carolina law that the General Assembly does, nor do any of them speak for the Senate Ethics Committee, which would be adversely impacted by this litigation if the Plaintiff's incorrect arguments succeed. While the existing defendants may share common goals with President Alexander, they are all members of the executive branch of government; none speak from the perspective of protecting and defending the work of the Legislature and its policy judgments, and none share this same interest with President Alexander.

To be sure, the General Assembly has recognized that its own leadership can best represent the Legislature's interests and expressly authorized its leadership to seek intervention in federal litigation where a state law is challenged, even if the Attorney General has also appeared in the case. *See* 2021–22 Appropriations Act § 91.26 (vesting the President of the Senate and the Speaker of the House of Representatives with the authority to seek to intervene in federal litigation in cases challenging "the constitutionality of a state statute" or "any action of the Legislature").

The Court has previously recognized that such legislation authorizes intervention as a matter of right for state legislative leaders. *See, e.g.*, *SCE&G v. Whitfield*, Case No. 3:18-cv-1795-JMC, 2018 U.S. Dist. LEXIS 120174, at *11 (D.S.C. July 18, 2018) ("Additionally, if a state statute or legislative act gives legislative leaders authority to defend legislative enactments, then the legislative leaders are able to intervene as a matter of right."). It should reinforce this principle here and permit President Alexander to intervene as a matter of right in this matter.

II. **Alternatively, President Alexander should be permitted to intervene because the interests he seeks to assert and defend are put squarely at issue by the Plaintiff's request that the Court strike a South Carolina statute.**

If the Court does not believe that President Alexander has a right to intervene, it should still permit him to do so. As this Court recently recognized when the Senate President sought to intervene in other constitutional challenges to South Carolina law, Rule 24(b) "should be construed liberally in favor of intervention." *Thomas v. Andino*, Case No. 3:20-cv-1552-JMC, 2020 U.S. Dist. LEXIS 154244, at *7 (D.S.C. Aug. 24, 2020) (quoting *Savannah Riverkeeper v. U.S. Army Corps of Eng'rs*, Case No. 9:12-610-RMG, 2012 U.S. Dist. LEXIS 200026, at *7 (D.S.C. Aug. 14, 2012)).

Permissive intervention should be allowed when a motion is timely filed, when the movant asserts a common question of law or fact to that already presented in the case, and when the intervention will not unduly delay the litigation. *Id.*

President Alexander meets this low threshold for permissive intervention. As explained above, this motion is filed before anything substantive has occurred in this matter, and before the pleadings have closed. And because the case is still in a preliminary stage, the addition of legislative leadership at the outset will not cause any delay or prejudice to the Plaintiff or any other litigant, as President Alexander is prepared to meet all of the case's existing deadlines.

Finally, President Alexander's position in this case arises exclusively from the same law that is challenged in the Complaint. The Plaintiff asks this Court to suspend a duly enacted statute that was designed by the General Assembly to provide for the orderly investigation of alleged violations of the State Ethics Code by not only the Ethics Commission, but also by the Legislative Ethics Committees and law enforcement; President Alexander seeks to intervene in order to protect the General Assembly's interests in that law.

Accordingly, President Alexander should be permitted to intervene in this case to protect the Legislature's interests that are at issue in, and jeopardized by, this litigation, just as the Court has previously approved several times. *See, e.g.*, *Planned Parenthood S. Atl. v. Wilson*, Case No. 3:21-cv-508-MGL (D.S.C. Mar. 9, 2021) (Dkt. No. 62) (permitting Speaker Lucas to intervene in litigation challenging the constitutionality of South Carolina's Fetal Heartbeat and Protection from Abortion Act); *Thomas*, 2020 U.S. Dist. LEXIS 154244, at *17–18 (permitting Speaker Lucas and then-President Peeler to permissively intervene in litigation challenging portions of the South Carolina Election Code); *Middleton v. Andino*, Case No. 3:20-cv-1730-JMC, 2020 U.S. Dist. LEXIS 152138, at *16–17 (D.S.C. Aug. 21, 2020) (same as *Thomas*).

**III.     If this motion is granted, President Alexander intends to defend the constitutionality of the challenged legislation and seek dismissal of this case, as the Plaintiff's claim is based on a faulty premise, and there is actually no First Amendment issue in play.**

Pursuant to Rule 24(c), President Alexander states that he intends to defend the constitutionality of the challenged legislation if the Court grants this motion. *See SCE&G*, 2018 U.S. Dist. LEXIS 120174, at *6 n.4 (providing that a potential intervenor need not attach a proposed pleading to its motion to intervene as long as the motion "provides notice to the court and the parties of his intention in the case").

As indicated above, the Plaintiff's claim is based on an incorrect reading of the State Ethics Code. The Plaintiff has styled his attack on the Ethics Code as a First Amendment challenge because, in his view, the statute "gags a citizen from speaking about an ethics complaint made about a public official." (Compl. at 1 (Dkt. No. 1).) But the Ethics Code does no such thing. Instead, it provides confidentiality in the investigation process and regulates only what information the government itself may release. *See* S.C. Code Ann. § 8-13-320(10)(g) (providing potential criminal punishments for "[t]he willful release of confidential information"); *id.* § 8-13-100(7) (defining "confidential information" as information that "is obtained by reason of the public position or office held and is of such nature that it is not, at the time of transmission, a matter of public record or public knowledge").

Nowhere do the provisions challenged by the Plaintiff require the silence on which he is basing his constitutional challenge. Without any such restriction on the Plaintiff's speech, his claims fail as a matter of law and should be dismissed.

And, respectfully, if doubt remains as to how the State Ethics Code should be interpreted, that question should be certified to the South Carolina Supreme Court so that any construction of state law can be rightly addressed by a state court, rather than asking a federal court to issue a

constitutional ruling in the first instance. *See, e.g.*, *Slack v. McDaniel*, 529 U.S. 473, 485 (2000) (explaining that federal courts "will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of" (quoting *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring))).

## CONCLUSION

For the reasons explained above, President Alexander respectfully requests that the Court grant this motion and allow him to intervene in this case. Pursuant to Rule 11, President Alexander states that he consulted with all parties before filing this motion, and all parties other than Solicitor Gipson have consented to the relief requested by this motion. Solicitor Gipson has not indicated whether he consents, objects, or takes no position on this motion.

WOMBLE BOND DICKINSON (US) LLP

By: /s/ Kevin A. Hall
  Federal Bar No. 5375
  kevin.hall@wbd-us.com
  M. Todd Carroll
  Federal Bar No. 9742
  todd.carroll@wbd-us.com
  1221 Main Street, Suite 1600
  Columbia, South Carolina 29201
  803-454-6504

  *Attorneys for Senator Thomas C. Alexander, in his capacity as President of the South Carolina Senate*

December 13, 2021